(129 So. 147)

GROSZ v. NOLAN.

No. 30339.

May 5, 1930.

Rehearing Denied June 2, 1930.

U. Marinoni, Jr., and Michel Provosty, both of New Orleans, for appellant.

Jess Johnson, of Baton Rouge, and F. Wilfred Gaudin, Milton R. De Reyna, and E. K. Gaudet, all of New Orleans, for appellee.

LAND, J.

Plaintiff sues under a written contract with defendant for a commission of $4,097.90, and, in the alternative, for a commission of $3,510.75.

Judgment was rendered in the lower court for plaintiff on the main demand in the sum of $3,996.70, with legal interest thereon from July 1, 1925, until paid, and all costs.

The demand in reconvention of defendant was rejected. Defendant has appealed.

The contract upon which plaintiff relies is of date June 26, 1922. Under the terms of this contract plaintiff, as architectural draughtsman, was placed in charge of a branch office to be opened at Baton Rouge, La., by defendant, who is an architect.

As stated in the contract: "The duties of the said party of the second part (plaintiff) shall be to prepare the necessary plans and specifications and supervise all the work intrusted to him *in the vicinity* of the said new branch office; give his entire and undivided attention to the business of the said branch, and take an active interest in all matters which

may come up affecting the said business of the said party of the first part *in and about the said locality of Baton Rouge.*"

Under the terms of the contract, plaintiff was to receive a salary of $275 per month, which was increased later to $300 per month.

It is expressly stipulated in the contract: "That *in addition* the said party of the first part (defendant) shall pay to the said party of the second part (plaintiff) a sum equal to *ten per cent net of all business which shall be hereafter secured* by the said branch office at Baton Rouge."

The salary due plaintiff has been paid. The present suit relates only to commissions claimed by plaintiff.

As stated, the contract is of date June 26, 1922. On July 1, 1922, plaintiff entered upon the discharge of his duties at Baton Rouge, La., under the contract.

It is provided in the contract that it "shall be in force and effect for a period of twelve months from the date hereof, and to be renewed yearly within the option of both parties."

In June, 1923, prior to the expiration of the contract, it was renewed and extended to June 22, 1924. At the end of the second year, 1924, the contract was again renewed and extended, and remained in force until July 1, 1925, when plaintiff exercised the option provided in the contract and declined to renew same.

1. The main demand of plaintiff for commissions is based upon a 10 per cent. commission on $42,553.23, the alleged net profit of the branch office at Baton Rouge for the period, January 1, 1924, to July 1, 1925, or the sum of $4,255.32, less $200 paid on commissions by defendant on December 31, 1925, leaving a balance of $4,055.32.

In addition to this commission, plaintiff also claims an item of $20.58, and an item of $22, hereafter referred to, thereby making plaintiff's main demand the total sum of $4,097.90.

Included in the list of architect fees, upon which plaintiff claims a commission of 10 per cent., is the item, "Central High School, $30,-043.83."

Plaintiff had nothing to do with securing this contract. Defendant was selected as architect at a meeting of the East Baton Rouge school board on April 20, 1925, as shown by letter dated April 21, 1925, addressed to defendant at his New Orleans office. It required seven or eight months to complete the plans and specifications which were prepared by the New Orleans office. The contract was not let until in April, 1926.

Plaintiff severed his connection with defendant July 1, 1925, and, of course, did not supervise the work.

Plaintiff's duties, as clearly defined in his contract with defendant, are *"to prepare the necessary plans and specifications and supervise all the work* intrusted to him in the vicinity of said new branch office."

It is evident that plaintiff did not perform any services, under the contract with defendant, that entitle plaintiff to the commission claimed on the Central High School item of $30,043.83.

This item should not have been allowed by the trial judge in arriving at plaintiff's commission.

2. Items, "J. Y. Sanders, Jr., $360," and, "Albritten Bros., $432," for plans and specifications, were rejected by the trial judge.

Plaintiff has neither appealed nor answered the appeal and prayed for any amendment of

the judgment in these particulars. The judgment must therefore be considered final as to these items.

3. The trial judge properly allowed plaintiff's claim of $20.58, set up in article IV of the petition. This balance is clearly due plaintiff on defendant's own statement as to the total of the architect's fees received by the Baton Rouge office between July 1, 1922, and December 31, 1923. The error is a palpable mistake in the calculation made by defendant of the commission due plaintiff.

4. The claim of $22 for extra compensation in making changes and alterations in the plans and specifications for Joseph N. Nolan has been abandoned by plaintiff in his brief.

5. Plaintiff's main demand for commissions is based upon gross architect's fees received by the Baton Rouge office from January 1, 1924, to July 1, 1925, and alleged to amount to the sum of $53,263.23.

The "Central High School item, $30,043.83," the "J. Y. Sanders, Jr., item, $360," and the "Albritten Bros. item, $432," must be deducted, for reasons already given, from the gross receipts, $53,263.23. A balance of $22,427.40 is left.

From this balance must also be deducted the sum of $10,910, the cost of operation of the Baton Rouge office for the period from January 1, 1924, to July 1, 1925, leaving as the total net profits the sum of $11,517.40.

Plaintiff is therefore entitled to recover a commission of 10 per cent. on the sum of $11,517.40 on his main demand, or the sum of $1,151.74, plus the item of $20.58, balance due on commissions, or a total of $1,172.32.

This sum is subject to a credit of $200, paid by defendant on commissions December 31, 1925, leaving a balance of $972.32.

■ 6. The alternative demand of plaintiff for a commission of $3,510.75 must be rejected, since the commission is claimed on contracts entered into by defendant prior to June 26, 1922, and plaintiff's contract of that date with defendant expressly provides that the 10 per cent. commission shall be restricted to "all the business which shall be *hereafter* secured by the said branch office at Baton Rouge."

[4] 7. In his reconventional demand, defendant has attempted to hold plaintiff responsible for certain architect's fees, solely for the reason that plaintiff failed to collect same.

It is clear that plaintiff was under no legal duty under his contract with defendant to make such collections, and, therefore, cannot be made liable to defendant for any loss arising from failure to collect.

Defendant has also claimed in reconvention damages in the sum of $6,000, on the ground that plaintiff took from defendant contracts and jobs, the knowledge of which came to plaintiff during his employment by defendant.

Defendant has also reconvened for damages in the sum of $10,000, on the bare allegation that plaintiff, after severing his connection with defendant, "armed with the information as to the existence of jobs which he secured through defendant's office, openly proclaimed himself a competitor of defendant."

These claims are mere verbalism, without proof in the record to sustain them.

■ The insistence of defendant that the expense of the operation of other branch offices owned by him, and that the federal income tax based upon the net profits of these offices, should be deducted in arriving at the net profits of the Baton Rouge branch office, is without the slightest force or merit.

As clearly stated upon its face, the contract upon which plaintiff sues relates only to the business secured by the Baton Rouge office "in and about the said locality of Baton Rouge." Necessarily, the expense incurred in conducting this particular branch office should be deducted, and no other, in arriving at the net profits, upon which plaintiff is entitled to claim a commission.

[6] Federal income taxes are imposed *upon* net profits. Consequently, such taxes cannot be deducted *from* the net profits of the Baton Rouge office, in order to determine the net profits of this particular branch office.

Besides, there is nothing in plaintiff's contract with defendant that contemplates or justifies the deduction of an income tax from the net profits of the Baton Rouge branch office, in order that the net profits of this particular branch office might be ascertained.

The reconventional demand of defendant was properly rejected by the trial judge.

Defendant has filed in this court an exception of no cause or right of action, and an exception that plaintiff is without interest and has no right to sue. Both of these exceptions are without merit. Plaintiff has clearly set forth a cause of action, based upon a valid contract containing mutual obligations, and has maintained his right to sue and his interest in the contract by actual proof of his claim, in part, to the commissions, for which he sues. It is therefore ordered that the judgment appealed from be amended by reducing the amount of same from $3,996.70 to $972.32.

It is now ordered that the judgment, as amended, be affirmed, and that plaintiff, appellee, pay the costs of the appeal.