Shotwell & Brown, of Monroe, for defendant and appellee.

FOURNET, Justice.

This case presents the identical issues disposed of in the case of State of Louisiana v. Interstate Natural Gas Co., Inc., 200 La. 52, 7 So.2d 612, handed down this day, and for the reasons therein assigned, the judgment appealed from is affirmed.

**7 So.2d 615**

## STATE of Louisiana v. MEMPHIS NATURAL GAS CO.

### No. 36288.

March 30, 1942.

Eugene Stanley, Atty. Gen., Cicero C. Sessions, Sp. Asst. Atty. Gen., John B. Smullin, of Baton Rouge, and Travis Oliver, Jr., of Monroe, for plaintiff and appellant.

Shotwell & Brown, of Monroe, for defendant and appellee.

FOURNET, Justice.

This case presents the identical issues disposed of in the case of State of Louisiana v. Interstate Natural Gas Co., Inc., 200 La. 52, 7 So.2d 612, handed down this day, and for the reasons therein assigned, the judgment appealed from is affirmed.

**7 So.2d 615**

### STATE v. TOMASELLA.

### No. 36603.

March 30, 1942.

Graham & Graham, of New Orleans, for relatrix.

John D. Nix, Jr., of New Orleans, for respondents.

HIGGINS, Justice.

The application for writs of certiorari, prohibition, and mandamus in this case involve the question of whether or not the Juvenile Court or the Civil District Court of the Parish of Orleans has jurisdiction to award the custody of a minor child, who is charged with being neglected.

The parents of the little girl were married on May 24, 1938, and Shirley Mae, now three years of age, is the sole issue of the union.

On May 15, 1941, the husband instituted a suit for a separation from bed and board from the wife on the grounds of abandonment. She filed a reconventional demand against her husband alleging cruel treat-ment, and prayed for the temporary and permanent custody of her minor daughter and for alimony for her support. Upon the trial of the rule nisi, the temporary custody of Shirley Mae was awarded to her mother and the father was ordered to pay $5 per week for the support of the child. He appealed suspensively from the judgment awarding the alimony and that matter is pending in this Court. Later, the father instituted another summary proceeding for the custody of the child, based upon alleged immoral conduct of the mother, but the trial judge refused to deprive the mother of the custody of the child because of her tender age. The father applied to this Court for writs of certiorari, prohibition, and mandamus, which were refused on the ground that we did not consider the case one requiring us to exercise our supervisory jurisdiction.

Complaint was made to the Juvenile Court that the child was without proper parental care and that the mother had gone to Texas with her paramour. The Chief Probation Officer of the Juvenile Court swore out an affidavit charging the child with being neglected and "without proper parental care or guardianship," as the mother was a drunkard and was in Texas with her paramour. Thereafter, a warrant was issued and the child was taken from the custody of the maternal grandparents, with whom the mother had been residing before she went to Texas.

On February 13, 1942, the judge of the Juvenile Court, without a hearing, placed the child in the custody of its father, who

is residing with his mother, his sister and her husband.

On February 24, the husband filed a supplemental petition in the separation proceedings in the Civil District Court setting forth certain alleged immoral conduct on the part of the wife and asked that he have judgment as originally prayed for against her and that he be awarded the custody pendente lite of his minor daughter.

On March 2, the wife was granted writs by this Court when she complained that the Juvenile Court was without jurisdiction to deprive her of the custody of her minor daughter without charge or proof that the little girl was either a neglected or delinquent child.

From the return of the attorney for the husband in this Court, it appears that he filed another rule against his wife to show cause why she should not be deprived of the custody of her minor daughter on the grounds of alleged immoral conduct, and after this rule was heard on its merits, the trial judge withheld judgment until the question of jurisdiction has been finally determined by this Court.

The respondent judge maintains that the Juvenile Court and not the Civil District Court has jurisdiction of the question of whether or not the child is neglected and avers that the relator's application for writs was premature.

From the returns before us, it appears that after the complaint was made that the child was a neglected one, the Juvenile Judge instructed the Associated Catholic Charities to make an investigation of the child's mother and father and their homes. The report, dated February 12, shows that the wife, with Shirley Mae, was residing in an undesirable neighborhood, in two rooms in a small rooming house occupied by her mother, her stepfather and her grandmother; that a lottery was being operated from one of the rooms which was used as a kitchen and the other, a bed room, had two double beds in which the five occupants slept; that a barroom and restaurant were operated in the front room of the rooming house; that the mother had been a waitress in a restaurant but quit her job and left the City and went to Texas with a soldier to visit a relative and it was not known how soon she would return; that the stepfather is employed in a gambling house at night and assists in attending to the child in the daytime; that the mother contributes very little to the home, which is maintained by the stepfather and his wife; that the couple separated on account of the cruel treatment of the husband; that the father never went to see the child nor sent it clothing or shoes; that the child is an attractive one but is not in good health and is suffering from bronchial disorder; that she was not particularly clean and her clothing was not in good condition; that they also visited the home occupied by the father of the child, which is located in a respectable neighborhood and consists of half of a double house with five large, well ventilated rooms; that this home is neat and clean and well furnished; that the husband's mother, his sister and her husband and their infant daughter occupy the home; that they pay $25 per month rent

and of this amount the father of the child contributes $10 per month; that the father has been working at the Jackson Brewing Company for nine years and earns $25 per week; that the child is welcome in this home and good care will be taken of her; that the relatives of the husband charged the wife with having caused the separation due to her promiscuous and immoral conduct; that if Shirley Mae were living with her father's relatives she would be in a wholesome atmosphere and in a good environment and would obtain the necessary moral and spiritual training; and that, although it could be said that possibly the child had been receiving adequate physical care with the maternal relatives, the surroundings in that home were not good.

Subsequent to the report, the Chief Probation Officer charged Shirley Mae in an affidavit with being a neglected child "without proper parental care or guardianship; parents separated; mother in Texas with paramour; mother is a drunkard."

Acting upon the above report, information obtained, and the affidavit, the Juvenile Judge, on February 13, temporarily placed the child in the custody of her father until further orders, and set the case for trial on the merits on March 4, 1942.

In the case of Buffington v. Goldman, 152 La. 647, 94 So. 147, the mother was awarded the custody of her minor son and alimony for his support in a divorce proceeding in the Civil District Court of Orleans Parish. Later, she ruled her husband into court to show cause why he should not pay the alimony. In the meantime,

upon the suggestion of the husband, an affidavit was filed in the Juvenile Court for the Parish of Orleans charging that the child had become a delinquent or neglected one. The judge awarded the custody of the boy to a third person and ordered the father to pay $40 per month for his support.

When the rule for alimony was taken up in the Civil District Court, the husband pleaded to the jurisdiction of the court on the ground that the Juvenile Court had obtained jurisdiction over the child thereby divesting the Civil District Court of jurisdiction over him. The district judge maintained his own jurisdiction, and the husband then applied to this Court for writs of certiorari and prohibition. In setting aside the judgment of the district court and upholding the jurisdiction of the Juvenile Court, we stated:

"In State v. McCloskey, 136 La. 739, 67 So. 813, this court held that the jurisdiction of the district court, in a divorce proceeding, 'was confined to controversies between the parents over the custody of the child,' which jurisdiction did not exclude that of the juvenile court to inquire, in a proceeding by the state, whether or not such child was delinquent (neglected) within the meaning of the statute establishing the juvenile court.

"In Brana v. Brana, 139 La. 305, 71 So. 519, this court held that—'The decision of the juvenile court, vested with jurisdiction to determine when a child answers the description of a neglected child, * * * is not to be challenged except in a direct action brought for that purpose, or in some

appellate tribunal; and hence is not subject to inquiry in the civil district court, but must there be assumed to be well founded. * * * And if the civil district court, having civil jurisdiction of a suit for separation from bed and board, had awarded the child to the mother, there was nothing to prevent the juvenile court from finding that the child was neglected and from taking it away from the parent who was neglecting it, or from both parents. * * *"

In State ex rel. Graham v. Graham, 173 La. 469, 137 So. 855, 856, the mother had been granted the custody of her three minor children and the father was ordered to pay $50 per month for their support. More than four years later, the father filed an affidavit in the Juvenile Court of Caddo Parish, charging that his wife had contributed to the neglect of the minor children and that she was unfit to have custody of them. The mother excepted to the jurisdiction of the Juvenile Court on the ground that the district court which had awarded her the custody of the children in the divorce proceedings had jurisdiction to determine whether or not she should be deprived of their custody. The exception was overruled and she appealed. In affirming the judgment of the lower court, we said:

"It is therefore clear that juvenile courts have jurisdiction to try all cases involving the neglect or delinquency of children under seventeen years of age, and that when such child or children are found to be neglected in the sense used in the act and the Constitutions, such child or children may be removed by the court from the custody of the person contributing to its or their neglect and placed in the custody of another.

"The fact that a district court has previously placed a child in the custody of one of the parents in a divorce proceeding does not vest that court with perpetual, exclusive jurisdiction to try all cases involving the welfare of such child. In a divorce suit, which is purely a civil proceeding, where there are children of the marriage, there may, and usually does, arise a controversy between the parents as to which is entitled to their custody, and the district judge has jurisdiction to determine which of the parents, or whether either of them, shall have custody of the children after the dissolution of the marriage. That is a controversy between the parents.

"But cases involving the neglect or delinquency of children are quasi criminal in their nature, in which cases the state is a party. In cases of neglect, the state acts for and on behalf of the child against either or both parents who may have it in custody, and this creates an issue between the state and the parent, of which issue the juvenile courts have jurisdiction under the express provisions of the Constitution and the statute. Brana v. Brana, 139 La. 305, 71 So. 519."

In the matter In re Owen et al., 170 La. 255, 127 So. 619, it was held that an affidavit filed in the Juvenile Court charging that the minor under seventeen years of age was a neglected or delinquent child was a quasi criminal proceeding between the State and the child or the parent who is alleged to have contributed to the delinquency or neglect of

it, and that, in such cases, the Juvenile Court under the Constitution is granted exclusive jurisdiction thereof. The Court also pointed out the difference between the general civil jurisdiction in respect to the care, custody and control of minors and the jurisdiction of the Juvenile Court where they were charged with being neglected or delinquent, or where someone was charged with contributing to their delinquency. See also State ex rel. Herbert v. Renaud, 157 La. 776, 103 So. 101, and State v. Bruce, 178 La. 1081, 152 So. 911.

In the case In re Caronna, 197 La. 494, 2 So.2d 1, 2, the adopting parents instituted proceedings in the Juvenile Court to have restored to them the custody of their adopted minor child who had been previously adjudged a neglected child by the Juvenile Court of Caddo Parish. The trial judge disallowed their request and they appealed. In affirming the judgment of the district court, we said:

"In cases of this kind the court has only one paramount interest, i. e., the physical and moral welfare of the child. Before restoring the child to its parents, therefore, the court must be satisfied that the child's best interests depend upon such restoration. In arriving at this conclusion, the judge is not bound by the evidence introduced on the hearing of the application for the child's restoration but may take judicial cognizance of any records that may be in his court touching on the matter. If he thinks the case requires such action, he may even go so far as to institute an independent investigation of his own into the habits and character, as well as the circumstances surrounding the lives of the parents to whom he is asked to restore a neglected child, in an effort to determine whether or not such restoration is to the child's best interest.  *  *  *"

A "neglected" child is defined in Section 3 of Act 126 of 1921, Ex.Sess. (Dart's Statutes, Section 1711), as follows:

"The term 'neglected' child shall mean any child seventeen years of age and under, not now or hereafter inmates of a State Institution, found destitute, or dependant on the public for support, or without proper guardianship, or whose home, by reason of the neglect, cruelty, depravity or indigence of its parents, guardians, or other persons, is an unfit place for said child, or having a single surviving parent undergoing punishment for crime, or found wandering about the streets at night without being on any lawful business."

Section 5 of the same Act (Dart's Statutes, Section 1713) provides:

"*  *  *  All proceedings against neglected or delinquent children may be by affidavit, made before the Clerk of Court or any committing magistrate, by any reputable person, charging the child with being neglected or delinquent, and briefly setting forth in general terms the facts constituting said neglect or delinquency; and when made by the District Attorney, or a probation officer, may be upon information and belief. Upon the filing of such affidavit, the Court, shall issue a summons to the person having the custody of such child, to appear with the child on the day following the service of such summons; and failure to comply with the order of the court shall subject the per-

son summoned to punishment as in case of contempt. Whenever it shall appear to the Court that said summons has proven or is likely to prove ineffectual, or whenever the Court, in its discretion, considers it expedient, a warrant may be issued for the arrest of the person with whom the child may be, or for the arrest of the child itself.

"Pending the trial, the Court may permit the child to remain in the possession of the person having the custody of said child, or may place it in the custody of any person, association, or institution deemed proper in the judgment of the Court."

In the light of the foregoing jurisprudence, as well as the above quoted provisions of the statute applicable to this case, it is clear that the minor is charged with being a neglected child within the meaning and contemplation of the law, and that the Juvenile Court had jurisdiction to determine that issue, even though the mother had been previously granted the temporary custody of the child in the separation from bed and board proceedings pending in the Civil District Court. Under the express provisions of Section 5 of Act 126 of 1921, above quoted, the Juvenile Judge had discretion to place the alleged neglected child in the custody of any person he deemed proper, pending the trial.

The relator relies upon the case of State v. McMillan, 191 La. 317, 185 So. 269. In that case, the parents of the three year old child were living separate and apart but had not instituted separation from bed and board or divorce proceedings against each other. The father took the child from the mother and she filed an affidavit in the Juvenile Court for the Parish of Orleans charging the child with being a neglected one, without proper parental care or guardianship. Upon the hearing before the court, the trial judge overruled the father's plea to the jurisdiction and set the case for formal trial on the merits. It appears that sufficient evidence on the first hearing disclosed conclusively that the child was neither a neglected nor a delinquent child, and that the father had not been charged with contributing to its alleged neglect or delinquency. Under these facts and circumstances, this Court held that the Juvenile Court was without jurisdiction as the case involved simply a question of whether the mother or the father was entitled to the custody of the child. This case is not applicable here because there was not any evidence adduced on the charge that the little girl is a neglected child, showing that she is in fact not neglected, the trial of that question having been prevented by the issuance of writs with a stay order. The affidavit charging the child with being neglected sufficiently sets forth grounds of neglect in legal contemplation. Of course, in the trial of the case on the merits the burden is upon the State to prove the charge by pertinent and adequate evidence.

For the reasons assigned, it is ordered, adjudged and decreed that the writs of certiorari, prohibition and mandamus issued herein are recalled and vacated at the relator's costs.