19 So.2d 203

In re SHERRILL.

No. 37543.

June 26, 1944.

Rehearing Denied July 14, 1944.

Prowell & McBride, of New Orleans, and Parker, Seale & Kelton, of Baton Rouge, for applicant.

Wilson & Abramson, of Shreveport, for respondent.

FOURNET, Justice.

This is a sequel to the case of In re Sherill, 204 La. 1096, 16 So.2d 885, wherein we denied Mrs. Virginia Paline Sherrill's application for a writ to prohibit the judge of the Juvenile Court of the City of Shreveport, Caddo Parish, because of his lack of jurisdiction, from proceeding with the case filed there by Mrs. Wilma Frey DeLaune charging that her granddaughter, Wilma Ann Sherrill, is a neglected child because no plea to the jurisdiction had either been filed in the inferior court by Mrs. Sherrill or passed on there. The matter is now before us for consideration on a writ of certiorari granted when Mrs. Sherrill called our attention to the fact that her plea to the juvenile court's jurisdiction, filed after our judgment in the former case became final and to which had been attached a certified copy of the proceedings in the Civil District Court for the Parish of Orleans awarding the custody of the minor to her, had been overruled and that a writ of prohibition should issue prohibiting the judge from proceeding further with the case.

In his written reasons for overruling Mrs. Sherrill's plea to his jurisdiction and in his response to the rule nisi issued for him to show cause why the relief sought by her should not be granted, the respondent judge, relying on the case of State v. Tomasella, 200 La. 60, 7 So.2d 615, takes the position that in passing on the plea to his jurisdiction he should only consider the allegations contained in the complaint filed by Mrs. DeLaune charging the minor with being a neglected child.

The record shows that the relator, when only a girl of 14, was persuaded to leave the high school she was attending in Baton Rouge with William M. Sherrill, 25, and go to Jefferson Parish, where they were married. Of this union, one child, Wilma Ann, was born in Charity Hospital in New Orleans on January 25, 1943.

A few days later Sherrill's mother, Mrs. DeLaune, took her daughter-in-law and the baby to live with her in Shreveport and they were joined there by Sherrill. Shortly thereafter the relator and her husband, leaving the baby with Mrs. DeLaune, who agreed to care for the child, returned to New Orleans, where the husband was employed. On August 17, 1943, the relator and her husband were separated and she went to live with her people in Baton Rouge, instituting a proceeding for separation from bed and board against her husband in the Civil District Court for the Parish of Orleans on August 26. On the same day, by order of court, she was awarded the provisional care and custody of her minor daughter. On September 11 following, Mrs. DeLaune, who, despite this order of court, still retained the custody of the child, filed an affidavit in the Juvenile Court for the Parish of Caddo (where she resided) charging that the baby was a neglected child. This is the affidavit that forms the basis of the controversy in this case. On September 24, Sherrill excepted to the Civil District Court's jurisdiction over the minor and, on the same day, his mother, Mrs. DeLaune, intervened in the separation proceedings seeking to have the custody of the child awarded to her on the ground that it had been abandoned by the father and mother; that its temporary custody had been placed with her under an order issued by the Juvenile Court in Shreveport; and that the home she could offer the child was superior to that to which the mother intended taking it. After a trial on the merits, at which both Sherrill and Mrs. DeLaune appeared and testified, the judge of the Civil District Court rendered judgment on October 11, 1943, dismissing Sherrill's exception to his jurisdiction and the intervention of Mrs. DeLaune, specifically granting the minor's care and custody to her mother, Mrs. Sherrill, for the written reasons given. Sherrill and Mrs. DeLaune applied to this court for writs on October 23, 1943, and they were refused by us on October 25, 1943. See our docket, No. 37,340.

Up to this time no action had been taken on the complaint filed by Mrs. DeLaune in the Juvenile Court in Shreveport, but immediately after our refusal to grant these writs, the matter was fixed for trial, citation being mailed to the relator at her home in Baton Rouge ordering her to appear in the Juvenile Court on October 26, 1943. The relator, without appearing or pleading in that court, applied to this court for a writ of certiorari, which we granted in order that the validity of the proceedings in the Juvenile Court might be reviewed, but we refused to grant the writ prohibiting the juvenile judge from proceeding with a trial of the case after we reviewed it, adhering to the rule that this court will not issue a writ prohibiting a judge from proceeding with the trial of a case where no plea to his jurisdiction has been filed and overruled. In re Sherill, 204 La. 1096, 16 So.2d 885. The judgment in this case having become final, the relator, on April 14, 1944, filed an exception to the jurisdiction of the Juvenile Court, which was overruled on May 5, for the written reasons assigned. It was to review this ruling of the juvenile judge that we

granted the writ of certiorari in this sequel.

The state legislature, by its Act No. 30 of 1924, acting within the contemplation of Section 52 of Article VII of the Constitution of 1921, created the office of Judge of the Juvenile Court for the Parish of Caddo (Section 1) granting such court, with the exception of capital crimes and assault with intent to commit rape, jurisdiction over "the trial of all children under seventeen years of age who may be charged in said court as neglected or delinquent children, and of all persons charged with contributing to such neglect or delinquency, or with the violation of any law now in existence or hereinafter enacted for the protection of the physical, moral or mental well being of children, not punishable by death or hard labor, and also in all cases of desertion or non-support of children by either parent, and actions for divorce, separation from bed and board and annullment of marriages * * *." Section 6. In Section 9 a "neglected child" is defined as "any child under seventeen years of age, not now, or hereafter, an inmate of a state institution, found destitute, or dependent upon the public for support, or without proper guardianship, or whose home, by reason of the neglect, cruelty, depravity or indigence of its parents, guardians, or other persons, is an unfit place for such child, or having a single surviving parent undergoing punishment for crime, or when found wandering about the streets or roads or anywhere at night, or wandering anywhere alone without being on any lawful business, or who, in the opinion of the court, is entitled to support or care by its parent or parents, where it appears that the parent or parents are failing or refusing to support or care for said child, or who habitually begs or receives alms, or who is found living in any house of ill fame or with any vicious or disreputable person or persons, or whose home, by reason of neglect, immorality or depravity on the part of its parent or parents, guardian or other person in whose care it may be, is an unfit place for such child, or whose environment is such or about whose custody a controversy may be such as to warrant the state, in the interest of the child, in assuming or determining its guardianship, or in determining what may be for the best interests of said child." The act further provides that all proceedings against neglected or delinquent children shall be by affidavit (Section 11) and that appeals from the action of such court are direct to the Supreme Court but only on questions of law. Section 7.

The affidavit filed by Mrs. DeLaune in the Juvenile Court charges in effect that the affiant, a person of means and good repute, is now, and has been since the child was 12 days old, in possession of the minor Wilma Ann Sherrill, the baby having been abandoned to her by its mother (paragraphs 1, 2, and 3) ; that the minor's mother resides in Baton Rouge with her parents, whose home is crowded and an unfit place for the child (paragraph 4) ; that the father of the child, her son, is not in a position to provide a fit place for the child other than the home of the affiant (paragraph 5) ; that the child's moth-

er is seeking to secure possession of the child in a proceeding for a separation from her husband in the Civil District Court for the Parish of Orleans, which court has no jurisdiction over the child (paragraph 6); that because of the controversy between the father and mother over the custody of the child, the child's interests will be seriously affected (paragraph 7); that having failed to care for and support the child, its parents have abandoned it, the only purpose of the litigation instituted in Orleans Parish being to force concessions from the father of the child for the personal benefit of the child's mother (paragraph 8); that the mother is only a child of 16 (paragraph 9); and (paragraph 10) *"that the Court should assume the determination of the best interests of the said child, the said child being neglected within the meaning of the law of Louisiana."* (Italics ours.)

Counsel for Mrs. DeLaune call our attention to the fact that the proceedings in the Juvenile Court are quasi criminal in nature and that since the affidavit filed by Mrs. DeLaune contains the allegation that the minor has been abandoned by its mother and its parents have failed and refused to support it or provide a fit home for it and the further allegation that a controversy has arisen over the child's custody, the affidavit charges the child within the meaning and contemplation of the act; consequently, that the Juvenile Court should assume the determination of what is for the best interest of the child, a matter that can only be arrived at after a trial of the case on the merits. Counsel further

argues that the relator "being a minor married woman under the age of eighteen years, as is revealed by the former application itself, Paragraph Five, she cannot appear in Court in her own behalf, and any proceedings instituted by her in any Court, including the present proceedings, are null and void."

While it is true that the affidavit filed by Mrs. DeLaune does contain the allegations pointed out by her counsel, there is annexed to relator's plea to the jurisdiction (which fact the juvenile judge apparently overlooked for in his written reasons for judgment he considers that these documents form a part of the brief filed in support of the plea and not of the plea itself) the sworn testimony given by Mrs. DeLaune when she appeared in the Civil District Court in Orleans Parish in support of her intervention and this testimony shows that the child was left with her at her solicitation and that she agreed to keep and care for it.

The fact that there is a controversy over the custody of the child does not alone warrant the state's interference for the purpose of determining what is for the child's best interests and, in our opinion, the facts of this case, as disclosed by the record, show beyond question that it is not a case warranting the state's action in this respect. The fact that Mrs. DeLaune is a woman of means and has a good home, as contradistinguished by the bare allegation that the relator's home is not a fit place for the child to live in, without any detailed facts, other than that it is overcrowded, supporting such allegation,

is a mere conclusion and insufficient to support the charge that the child is neglected. Moreover, it is only when a child "is found living in any house of ill fame or with any vicious or disreputable person or persons, or whose home, by reason of neglect, immorality or depravity *on the part of its parent or parents, guardian or other person in whose care it may be,* is an unfit place for such child" that it may be termed "neglected" within the meaning and contemplation of the act. It necessarily follows that since the child was, at the time this affidavit was filed, in the care and custody of Mrs. DeLaune, the very person making the complaint and who characterizes herself in the affidavit charging the child with being "neglected" as a woman of means and with a good home, it cannot be deemed that the child is a "neglected child." (Italics ours.)

In the Tomasella case, as distinguished from this case, the minor's father, in his affidavit filed in the Juvenile Court charging his child as being "neglected," detailed the facts supporting such charge by declaring that the child's mother, who had been given the child's temporary custody pending separation proceedings, was a drunkard and had gone to Texas with a paramour; that the child was left with her step-grandfather and grandmother, who occupied two rooms in a rooming house, living in one of them and operating a lottery in the other, there being a bar and restaurant in the front room of the boarding house; and that the step-grandfather, who assisted with the child's care, was employed in a gambling house, with the result that the child was unclean and her clothing in a bad condition, as well as her health.

The argument that the relator has no right to appear in the courts because of her age is without force for in the articles of the Revised Civil Code relative to emancipation of minors by marriage (379–384) it is provided that "The minor, emancipated by marriage, does not need the assistance of a curator in any act or proceeding." And there is nowhere in these articles, or any other law that we know of, any restriction placed on a wife's right to sue her husband for a separation or divorce and for the custody of the children born of their union.

It is our opinion, as contended by counsel for the relator, that the affidavit filed by Mrs. DeLaune in the Juvenile Court represents nothing more than an attempt on her part to try the right to the custody of the child as between the relator and the affiant, a matter that has already been determined adversely to the affiant by the dismissal of her intervention in the separation proceedings.

For the reasons assigned, the plea to the jurisdiction is sustained and the proceedings instituted in the Juvenile Court for the Parish of Caddo are dismissed.

HAMITER, Justice (dissenting).

This is not a contest between individuals involving the mere custody of a minor Rather, as indicated by the title of the cause, it is a proceeding in the Juvenile Court of Caddo Parish, quasi criminal in nature, in which the State is seeking to de-

termine what is for the best interest of the child, Wilma Ann Sherrill, she having been charged in an affidavit filed in that court with being neglected.

A distinction between the two kinds of proceedings is clearly pointed out in the case of In re Owen et al., 170 La. 255, 127 So. 619, 622, this court therein observing:

"The line of demarcation between the courts exercising general civil jurisdiction with respect to the care, custody, and control of minors and the juvenile courts is well defined. These courts, in dealing with the welfare and interest of minors under a given age, are entirely independent of each other. Where the contest is between the parents, or between a parent and a third person, as to who should have the control and care of the minor, the court exercising general civil jurisdiction is the proper and exclusive tribunal to decide the issue.

"*But, where a child is neglected or delinquent, and where the parent contributes to, or is responsible for, such neglect or delinquency, then the state has the paramount right in the interest of the welfare of the child to say who shall have the care, custody, and control of the child, and the juvenile court has been made the special and exclusive tribunal for determining such issue.*

"There is no force in the contention that this is not a proceeding by the state. It is true that the proceeding was initiated by the affidavit of individuals, but the charge as stated is quasi criminal, and it was made on behalf and in the interest of the state in the proper exercise of its paramount right to determine the best interest and welfare of the children in the manner provided by law.

"Nor is there any merit in the contention that the juvenile court of Claiborne Parish has no personal jurisdiction over the defendant. The children were in Claiborne Parish." (Italics ours.)

The Juvenile Court of Caddo Parish, by Section 6 of Act 30 of 1924, is vested with jurisdiction of the trial of children under 17 years of age who are charged therein as neglected or delinquent.

The term "neglected child", according to Section 9 of that statute, means "any child under seventeen years of age, not now, or hereafter, an inmate of a state institution, found destitute, or dependent upon the public for support, or without proper guardianship, or whose home, by reason of the neglect, cruelty, depravity or indigence of its parents, guardians, or other persons, is an unfit place for such child, or having a single surviving parent undergoing punishment for crime, or when found wandering about the streets or roads or anywhere at night, or wandering anywhere alone without being on any lawful business, or who, in the opinion of the court, is entitled to support or care by its parent or parents, where it appears that the parent or parents are failing or refusing to support or care for said child, or who habitually begs or receives alms, or who is found living in any house of ill fame or with any vicious or disreputable person or persons, or whose home, by reason of neglect, im-

morality or depravity on the part of its parent or parents, guardian or other person in whose care it may be, is an unfit place for such child, or whose environment is such, or about whose custody a controversy may be such as to warrant the state, in the interest of the child, in assuming or determining its guardianship, or in determining what may be for the best interests of said child."

And Section 11 of the Act, in so far as pertinent, states: "All proceedings against 'neglected' or 'delinquent' children shall be by affidavit made before the clerk of the court or any committing magistrate, by any reputable person, charging the said child with being 'neglected' or 'delinquent,' and briefly setting forth in general terms the facts constituting said 'neglect' or 'delinquency.' * * * Pending the trial, the court may permit the child to remain in the custody of the person with whom it is at the time of the issuance of the summons or warrant, or may place it in the custody of a person, association or institution deemed proper by the Court."

Furthermore, it may be observed that strict rules of pleadings do not obtain in the Juvenile Court.

While the minor Wilma Ann Sherrill was, and had been for a long period of time, residing within Caddo Parish, her grandmother, Mrs. DeLaune, filed in the Juvenile Court of that parish an affidavit specifically charging, among other things, that the child has been abandoned by its parents; that such parents are failing and refusing to support or care for it; that a controversy exists about the custody of

the child which warrants the court in assuming or determining what may be for its best interest; and that the home of the mother is an unfit place for the child to live in.

Acting upon that affidavit, as it was required to do, the court signed the following order:

"In this cause, by reason of a proceeding having been this day filed, supported by affidavit according to law setting forth allegations of neglect of the juvenile named of such nature, in the opinion of the court, to warrant the court in taking immediate steps to prevent said child from being removed from the jurisdiction of said court until a hearing can be had according to law:

"It is, therefore, ordered that said juvenile be taken in immediate custody of this court to be held pending a hearing according to law on the charge of neglect.

"Be it further ordered that the right of temporary custody and detention be hereby vested in Mrs. Wilma Frey De-Laune, and that she is hereby directed to hold said child in her custody as a ward of this court, in Caddo Parish, Louisiana, not to be removed from the jurisdiction of said court, subject to further orders.

"It is further ordered that all rights of the parents or other persons having an interest herein be reserved without prejudice."

After the Juvenile Court had thus taken custody of the child, but before a hearing could be had on the charge of neglect, the plea to the court's jurisdiction (that

which is now before us) was tendered. The judge, following his giving consideration to the plea, overruled it. In my opinion, that ruling was correct.

Certainly the Juvenile Court of Caddo Parish had jurisdiction rationae personae, for the child resided within the limits of that parish. In re Owen et al., supra. Also, in my opinion, it was vested with jurisdiction rationae materiae, such having attached immediately upon the filing by Mrs. DeLaune of the affidavit in which she charged the child with being neglected and briefly alleged in general terms facts constituting the neglect. This affidavit substantially, if not almost literally, follows the terms of the statute.

It is true that the affidavit contains allegations to the effect that affiant is a reputable person; but this is as the statute requires.

We are confronted now only with the mentioned plea to the jurisdiction; the merits of the case have never been heard by the Juvenile Court. For that reason it is improper for us to consider, as the majority opinion indicates has been done, the evidence adduced in the custody contest, a civil proceeding between individuals, held in the Civil District Court of Orleans Parish. If admissible at all, that evidence would be appropriate on a hearing of the merits which will come in due time if the plea to the jurisdiction be overruled.

Pertinent to the cause as it is now presented is the following expression in State, in the Interest of Bolin v. Bruce, 178 La. 1081, 152 So. 911:

"This proceeding was initiated by an affidavit, charging that the minor was under the age of seventeen years, and that she was a neglected child within the meaning of the law. If the case had gone to trial upon the affidavit, the juvenile court's jurisdiction to determine whether or not the child was a neglected child, and, if found to be so, to award its custody, could not have been questioned, for the pertinent part of section 6 of Act No. 30 of 1924 is as follows:

" 'The Juvenile Court for the Parish of Caddo shall have jurisdiction, except for capital crimes and assault with intent to commit rape, of the trial of all children under seventeen years of age who may be charged in said court as neglected or delinquent children.' "

For the above reasons I respectfully dissent.

**19 So.2d 209**
**REUTER v. REUTER'S SUCCESSION.**
No. 37373.
April 17, 1944.

Rehearing Denied July 14, 1944.