308 So.2d 508 (1975)
Richard K. MERTENS, Plaintiff-Appellant,
v.
Camilla Doiron MERTENS, Defendant-Appellee.
No. 4890.
Court of Appeal of Louisiana, Third Circuit.
February 12, 1975.
Rehearing Denied March 12, 1975.
Writ Refused June 6, 1975.
*509 Ford & Nugent by Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant.
Voltz & Ware by Gus A. Voltz, Jr., Alexandria, for defendant-appellee.
Before HOOD, MILLER, and WATSON, JJ.
MILLER, Judge.
Plaintiff Richard K. Mertens appeals the judgment rejecting his claim for custody of his three year old son and awarding custody to the maternal grandparents who were not parties to the suit. We reverse.
Other aspects of this case are considered in the companion case, Mertens v. Mertens, 308 So.2d 506 (La.App. 3 Cir. 1975).
Richard K. Mertens married defendant Camilla Doiron in May, 1970, while he was serving in the Armed Forces. Shortly thereafter he was ordered overseas to Viet Nam. While Richard was in Viet Nam, their son was born and Richard obtained a ten day leave to fly home to be with his wife and new born son. In August, 1971, Richard returned to the States and was stationed at Fort Hood, Texas. Camilla and their son accompanied Richard during this tour of duty.
Following his February 1972 discharge, Richard, Camilla, and their son returned to Rapides Parish to live in the home of Richard's parents. Some three weeks later they moved into a mobile home. Marital problems developed which could not be helped by a marriage counselor, and Richard moved out on November 2, 1972. On February 21, 1973, Camilla obtained a separation from bed and board grounded on abandonment. LSA-R.C.C. art. 138. She was awarded permanent custody of their son together with alimony pendente lite and child support of $180 per month.
Camilla began dating another man in March, 1973. In November, she and this other man, accompanied by her young son, moved to Westwego, Louisiana where they lived together as man and wife.
In January, 1974, Richard filed suit for divorce alleging adultery. LSA-R.C.C. art. 139. In the same suit he sought custody of his son.
On February 28, 1974 (four days prior to the custody hearing), Camilla and her son moved back to her parents' home in Rapides Parish. Judgment on the custody rule was signed April 2, 1974 holding the mother unfit and removing custody from Camilla. The court denied Richard's claim *510 for custody, and invoked the juvenile arm of the court to place the child in the "temporary custody" of the maternal grandparents. Richard applied to this court for supervisory writs (LSA-C.C.P. art. 2201), which application was denied on finding his relief to be by appeal. No appeal was taken from the interlocutory judgment on the custody rule.
Following the June 5, 1974 trial on the merits, judgment was rendered granting Richard an absolute divorce. The trial judge refused to rule on the issue of custody holding that this had been decided at the custody hearing. Richard timely appealed this ruling.
Camilla moved to dismiss this appeal contending that it was untimely, coming more than thirty days after the April 2, 1974 signing of the temporary custody judgment.
We consider these issues: 1) Was the appeal timely, and if so; 2) Did the trial court err in awarding custody to the maternal grandparents who were not parties to the suit, instead of awarding custody to the father.

Motion to Dismiss
Counsel for Camilla contends that Richard's appeal from the June 5, 1974, divorce judgment does not bring before this court the issue of custody, as the custody judgment of April 2, 1974, was a final appealable judgment. He contends that pursuant to LSA-C.C.P. art. 3943 an appeal had to be perfected therefrom within thirty days. We reject this argument.
A signed custody judgment which is incidental to the principal demand for divorce is an interlocutory judgment. Smith v. Martin, 269 So.2d 558 (La.App. 1 Cir. 1972); Bergeron v. Bergeron, 257 So. 2d 816 (La.App. 1 Cir. 1972); Hickman v. Hickman, 227 So.2d 14 (La.App. 3 Cir. 1969). See also LSA-C.C.P. art. 1841, official comment (d).
Richard's petition sought an absolute divorce founded on his wife's adultery and in the same petition he sought custody of his minor son. The custody rule was incidental to his main demand for divorce and therefore interlocutory. The trial judge termed the grant of custody to the maternal grandparents as "temporary," in effect saying that the judgment was not final.
We hold that the April 2, 1974, custody judgment was an interlocutory decree and was not appealable in the absence of irreparable injury. LSA-C.C.P. art. 2083. To hold otherwise would foster piecemeal appeals which is against public policy. McDonald v. Book, 215 So.2d 394 (La.App. 3 Cir. 1968). See also LSA-C. C.P. art. 1915, official comment (b).
The June 5, 1974, judgment granted Richard an absolute divorce and provided "that the issue of custody is not adjudicated upon herewith, the same having been adjudicated by judgment of this court on March 18, 1974, which judgment was read and signed on the 2nd day of April, 1974." We consider this decree to have denied Richard's prayer for custody. The June 5th judgment was therefore a final and appealable judgment. The appeal was timely perfected and the motion to dismiss the appeal is denied.

On the Merits
The April 2, 1974 interlocutory judgment found Camilla to be unfit and removed custody. It was incorporated by reference in the June 5, 1974 final judgment. Camilla has not appealed nor has she answered Richard's appeal. Therefore, that portion of the judgment pertaining to her "unfitness" and losing custody is final and is not here considered. Betz v. Riviere, 211 La. 43, 29 So.2d 465 (1947); *511 Grosz v. Nolan, 170 La. 736, 129 So. 147 (1930); Chauvin v. Chauvin, 282 So.2d 869 (La.App. 3 Cir. 1973).
The trial judge did not rule that Richard was unfit. He invoked the juvenile arm of the court and awarded custody to the maternal grandparents who were not parties to the suit on finding that Richard had failed to establish he could give his son a better home environment than could the maternal grandparents.
Juvenile courts do not have jurisdiction over a dispute between private litigants for custody of a child not within the purview of LSA-R.S. 13:1570 et seq. Wood v. Beard, 290 So.2d 675, 677 (La. 1973); In re Sherill, 206 La. 457, 19 So.2d 203 (1944); 19 Tul.L.Rev. 464.
The only provision of LSA-R.S. 13:1570 which might give jurisdiction to the juvenile court in this instance is that granting such jurisdiction when the child is abandoned by his parent. But Richard's abandonment in this case does not meet the requirements of this statute.
Camilla explained the circumstances surrounding Richard's abandonment. They contacted a marriage counselor who concluded that they should separate and that the "separation would have to be filed on abandonment by Richard." Camilla testified that Richard paid the notes on the mobile home in which she resided during the first part of their separation; that he drove her home from work on occasions, and that he stopped to see his son. After the separation, he paid the $180 monthly alimony and child support, and visited his son when he was being cared for by his mother. This is not the "abandonment" contemplated in LSA-R.S. 13:1570.
The trial court did not have jurisdiction to invoke the juvenile arm of the court.
When the parent and the parent's home are acceptable, it is not appropriate for the court to compare a parent's home with a non-parent's home and then award custody to a non-parent who can provide greater advantages for the child. Wood v. Beard, 290 So.2d 675 (La.1974); State In Interest of Taylor, 296 So.2d 841 (La.App. 3 Cir. 1974). This is particularly true when the maternal grandparents were not parties to the suit.
Richard lives with his parents in a three bedroom home situated on a 400 acre dairy farm in Lecompte. He is currently working, but plans to complete his college training in veterinary medicine. He is preparing for admission by attending classes at LSU-A, a college located close to his home. Richard's mother expressed love for the child and willingness to assist in raising the child. At the start of the separation, Richard's mother took care of her grandchild three days a week while Camilla was working. When Camilla learned that her husband was visiting his son during these periods, she reduced these visits with the paternal grandmother.
The trial judge did not hold Richard to be unfit, and the evidence does not indicate that he was.
The trial court judgment is reversed and set aside insofar as it awarded custody to the maternal grandparents. Judgment is rendered granting custody of Richard K. Mertens, Jr., to his father Richard K. Mertens, Sr. Costs of court both at trial and on appeal are assessed to defendant appellee.
Reversed and rendered.