368 So.2d 1139 (1979)
Clarence GIROUARD, Jr., Respondent-in-Rule and Appellee,
v.
Elizabeth Ann HALPIN, Plaintiff-in-Rule and Appellant.
No. 6856.
Court of Appeal of Louisiana, Third Circuit.
March 7, 1979.
*1140 Louis M. Corne, Lafayette, for defendant-appellant.
John Rixie Mouton, Lafayette, Thompson & Perrin, Donald D. Landry, Lafayette, for plaintiff-appellee.
Before CULPEPPER, FORET and DOUCET, JJ.
CULPEPPER, Judge.
The plaintiff-in-rule, Elizabeth Ann Halpin, filed this summary proceeding alleging that she is the mother of the minor child, Brett Louis Halpin, who is presently in the custody of the defendant, Clarence Girouard, Jr., under a prior district court judgment. She prayed that she be awarded custody. After a hearing on the rule to show cause, the district judge held that the district court did have jurisdiction in the previous suit by Girouard, a non-parent, against Ms. Halpin, a parent. Furthermore, the judge held on the merits that the mother is unfit and that the best interest of the child requires that it remain in the custody of Mr. Girouard. From a judgment dismissing her rule for custody, the plaintiff-in-rule appeals.
The issues presented are: (1) Did the district court have jurisdiction of the prior suit by Girouard, a non-parent, against Ms. Halpin, a parent, for custody of the minor child? (2) Was summary process appropriate in that suit? (3) Is Ms. Halpin estopped from attacking the validity of the prior custody judgment because of her acquiescence, LSA-C.C.P. Article 2003? (4) On the merits, is Ms. Halpin unfit for custody and does the best interest of the child require that it remain in the custody of Girouard?
The general facts are that on October 20, 1975, while unmarried but living with Donald Chaisson, a married man, Ms. Halpin gave birth to the minor child, Brett Louis Halpin. On October 20, 1977, she had another illegitimate child, a daughter named Tanya. Ms. Halpin testified that Donald Chaisson, whom she married on February 28, 1978, is the father of the second child.
In early January of 1978, Ms. Halpin consented to give custody of Brett to her step-sister and her husband, Mr. and Mrs. Girouard, Jr. Ms. Halpin testified her reason was that she was working and couldn't pay babysitters. Witnesses for the Girouards testified that because of complaints to the Welfare Department about child abuse, Brett was about to be removed from Mr. Halpin's custody, so she consented to the Girouards taking the child. In any event, on January 17, 1978 the Girouards filed a summary proceeding in the district court alleging that Brett was in their home, having been placed there on January 13, 1976 by Ms. Halpin for the best interest of the child, and that they desired judgment awarding custody to them. Ms. Halpin was named defendant in the rule, and she was personally served. At the hearing on January 30, 1978, Ms. Halpin made no appearance. Judgment by default was entered on that date awarding the permanent care, custody and control of the child to Mr. Girouard, subject to reasonable visitation rights by Ms. Halpin.
*1141 On May 17, 1978, Ms. Halpin filed the present summary proceedings alleging that she gave the child to the Girouards only because of financial difficulties, that she is now married to Donald Chaisson who is employed, that they are able to care for the child, and that the best interest of the child will be served by changing custody to her.
JURISDICTION OF THE DISTRICT COURT
On appeal, Ms. Halpin contends the January 30, 1978 judgment of the district court awarding custody to Mr. Girouard is null and void for lack of jurisdiction of the subject matter. She argues that the district court has jurisdiction of a child custody suit by a non-parent against a parent only by writ of habeas corpus, and since this was neither a habeas corpus action nor a proceeding in juvenile court, the prior judgment is null.
This precise question of jurisdiction appears to be res nova in the appellate courts of Louisiana. A discussion of the problem begins with the constitutional and statutory provisions. Article 5, Section 16 of the Louisiana Constitution of 1974 provides in part: "Except as otherwise authorized by this constitution, a district court shall have original jurisdiction of all civil and criminal matters." Article 5, Section 18 provides: "Notwithstanding any contrary provision of Section 16 of this Article, juvenile and family courts shall have jurisdiction as provided by law." These are essentially the same provisions as were contained in Article VII, Sections 35 and 52 of the Louisiana Constitution of 1921 as to jurisdiction of district and juvenile courts.
LSA-C.C.P. Article 10(5) provides:
"Art. 10. Jurisdiction over status
"A court which is otherwise competent under the laws of this state has jurisdiction of the following actions or proceedings only under the following conditions:

* * * * * *
"(5) A proceeding to obtain the legal custody of a minor if he is domiciled in, or is in, this state;"
LSA-R.S. 13:1570 provides the jurisdiction of juvenile courts as follows:
"Except as otherwise provided herein, the court shall have exclusive original jurisdiction in proceedings:
"A. Concerning any child whose domicile is within the parish or who is found within the parish;
"(1) Whose parent or other person legally responsible for the care and support of such child neglects or refuses, when able to do so, to provide proper or necessary support, education as required by law, or medical, surgical or other care necessary for his well-being; or who is abandoned by his parent or other custodian; or who is otherwise without proper care, custody or support; . . . ." (This portion of the statute has been in effect since added by Act 73 of 1973.)
In Griffith v. Roy, 263 La. 712, 269 So.2d 217 (1972), a grandfather brought an action in district court alleging his grandchildren were neglected by their mother following the divorce of the children's parents. He sought custody. By default judgment the grandfather was awarded custody. Later, the mother filed a writ of habeas corpus action in the district court seeking custody. The majority opinion in the Supreme Court held that although the grandparent's prior suit was styled a custody proceeding, it was actually a suit by a third party to have a child declared "neglected", and that such a suit could only be brought in the juvenile court under Article 7, Section 52 of the Louisiana Constitution of 1921. The court annulled the prior judgment awarding custody to the grandparent and remanded the case to the trial court for further proceedings in the mother's application for writ of habeas corpus.
In footnote 5, at page 222 of 269 So.2d, the majority noted that its holding was limited to jurisdiction of neglect cases, and that it was not deciding the propriety of an action by a third party or by a parent in district court for custody. Footnote 5 states:
"5. In this opinion we are determining only jurisdiction. The question of whether *1142 a third party has a right or cause of action to institute a suit which is in substance as well as style a civil proceeding for custody of minor children is not before the court. Neither do we reach the question of a third party's rights in civil custody proceedings pending between parents."
Thus, Griffith v. Roy does not prohibit the suit by Mr. Girouard against Ms. Halpin in district court for custody.
In Griffith v. Roy, Justice Dixon wrote a strong dissent in which he took the position that the grandparent's original suit was a civil suit for child custody of which the district court had jurisdiction under its unlimited jurisdiction in civil matters provided by Article 7, Section 35 of the Louisiana Constitution of 1921. Justice Dixon was of the view that the grandparent's suit was not to have the child declared "neglected", because the child was in the custody of the grandparent and was being well cared for, citing In re Sherrill, 206 La. 457, 19 So.2d 203 (1944) for the rule that a juvenile court has jurisdiction of a "neglected" child only where the child is in a present state of neglect. Justice Dixon's view was also that the juvenile court has exclusive jurisdiction only where the state is a party in a suit involving a "neglect complaint" in juvenile court.
In the subsequent Court of Appeal decision in Stuckey v. Stuckey, 276 So.2d 408 (2d Cir. 1973), a suit for separation from bed and board, the court held both parents unfit and awarded custody pendente lite to the grandparents. In answer to the contention by the mother on appeal that under Griffith v. Roy, supra, the district court had no jurisdiction to award custody to grandparents in preference to natural parents, the Court of Appeal pointed out that Griffith v. Roy does not hold that district courts lack jurisdiction to award custody to a non-parent in preference to a parent, the Supreme Court decision in Griffith v. Joy, being limited to a holding that a suit by a third party to have a child declared to be "neglected" must be filed in the juvenile court. The Court of Appeal in Stuckey pointed in particular to Footnote 5 in the opinion in Griffith, quoted above.
In Wood v. Beard, 290 So.2d 675 (La. 1974), the mother filed in district court a petition for writ of habeas corpus to recover the custody of her child from the grandparents. The district court awarded custody to the grandparents based on the best interest of the child. The Court of Appeal affirmed, 280 So.2d 567 (3rd Cir. 1973), holding Griffith v. Roy not controlling. In the Supreme Court, the mother argued that the district court was without jurisdiction to inquire into her fitness, citing Griffith v. Roy, supra. The Supreme Court held that in a habeas corpus action by a parent against a non-parent, the district court does have jurisdiction to consider the fitness of the parent and to award custody on the basis of the best interest of the child. However, the Supreme Court held on the merits that the mother was not shown to be unfit and that the best interest of the child required that custody be awarded to the mother. In discussing the question of jurisdiction the court stated:
"Plaintiff argues that only the juvenile courts have jurisdiction to interfere with parental authority. This is too narrow an interpretation of Griffith v. Roy, supra. We have previously held that the juvenile courts do not have jurisdiction over a dispute between private litigants for custody of a child not within the purview of R.S. 13:1570 et seq. In re Sherrill, 206 La. 457, 19 So.2d 203; 19 Tul.L.Rev. 464. Plaintiff's ultimate argument is that the result of Griffith v. Roy, supra, is that no court may inquire into the fitness of a parent seeking custody while the marriage is in existence and there is no separation or divorce action pending. This argument ignores the universally recognized proposition that the state and its courts are always concerned with the welfare of the child."
The only substantial difference between Wood v. Beard and the suit by Mr. Girouard against Ms. Halpin is that in Wood v. Beard the litigation was initiated by a petition for habeas corpus filed by the *1143 mother, whereas Mr. Girouard filed a civil suit by summary proceedings. As we construe the rationale of Wood v. Beard, it is not essential that the custody issue be brought before the district court by a writ of habeas corpus. The rationale of Wood v. Beard appears to be that the juvenile court does not have exclusive jurisdiction in a custody dispute between a parent and a non-parent where the child is not in a present state of neglect, requiring that the state protect the welfare of the child. In a situation where, as here, the child was not in a state of neglect but was being well cared for by Mr. Girouard the juvenile court does not have exclusive jurisdiction. We are impressed by the reasoning to this effect contained in the dissent by Justice Dixon in Griffith v. Roy. Justice Dixon expresses this same rationale as the author of the Supreme Court opinion in Wood v. Beard. Justice Barham, the author of Griffith v. Roy, dissented in Wood v. Beard, urging that under LSA-R.S. 13:1570 the juvenile court has exclusive jurisdiction in a custody dispute between a parent and a non-parent. However, no other justice joined in Barham's dissent.
We conclude the district court did have jurisdiction of the previous suit by Mr. Girouard against Ms. Halpin for custody.
USE OF SUMMARY PROCEEDING
On appeal, Ms. Halpin makes an additional argument that it was improper for Mr. Girouard to use summary process in his suit. This argument has no merit. LSA-C. C.P. Article 2592 expressly allows the use of summary proceedings in: "(8) The original granting of, subsequent change in, or termination of, child custody, . . . ."
It is noteworthy that Ms. Halpin herself had used summary proceedings in her present suit to regain custody.
ACQUIESCENCE BY MS. HALPIN IN PRIOR JUDGMENT
Mr. Girouard argues under LSA-C.C.P. Article 2003 that Ms. Halpin cannot attack the validity of the prior judgment because she was present in the parish at the time of its execution, did not attempt to enjoin its enforcement, and actually acquiesced in the judgment by giving custody to Mr. Girouard and allowing him to keep custody until she filed the present rule. Having decided that the prior judgment is valid, we do not reach the question of whether Ms. Halpin is estopped to attack it or to change it.
UNFITNESS OF THE MOTHER AND BEST INTEREST OF THE CHILD
At the hearing on Ms. Halpin's rule for custody, the trial judge heard much testimony by friends and relatives as to the unfitness of not only Ms. Halpin but of her present husband, Donald Chaisson. There is no question that the Girouards are giving the child proper care. In detailed written reasons the trial judge finds:
"After hearing the testimony of numerous witnesses in this matter, many of whom are related to the relator, it is the opinion of this court that the home provided by the relator and her husband, Donald Chiasson, and particularly the conduct of relator's husband toward the minor, Brett, is extremely detrimental to the welfare and best interest of Brett Halpin. Despite the fact that this court recognizes a superior right in the parent over a third party in custody matters, it will not sacrifice the child's physical well-being in order to effect that right."

* * * * * *
"At the custody hearing, an abundance of testimony was elicited to the effect that Brett Halpin is subject to physical abuse by either Donald Chiasson or the relator, Elizabeth Halpin, or both. Pat Halpin, relator's brother, testified that he, himself, made complaints to the child abuse center regarding Brett. This came in response to marks he saw on the child and bruises on the child's face. Mr. Halpin stated that the relator told him it was Donald Chiasson who had beat the child but that on another occasion, the relator admitted beating her child. He further testified that at Christmas last year, the mother admitted to beating Brett with a *1144 plastic baseball bat. Mr. and Mrs. Mike Halpin kept the child for about three weeks during the summer of 1977, having received the baby from the child's grandmother.
"Deloras Michaud, relator's first cousin, testified to bruises on the child's legs and arms and that the relator at one time admitted to administering the beatings and later blamed the beatings on Donald Chiasson. This witness further stated that Ms. Halpin told her she had locked the child in a closet. Romano Michaud testified that relator told her it was Mr. Chiasson who put the child in the closet for crying.
"Mrs. Judy Fellows, relator's step-sister, testified that Elizabeth Halpin told her that both she and her husband had bruised the child. Mrs. Donald Halpin, Mrs. Jo Ann Michaud and Mrs. Jules Le-Blanc, relator's grandmother, testified similarly that they had seen the marks and bruises on Brett and that relator admitted that she or her husband had inflicted them.
"Tina LeBlanc testified that she and Ms. Halpin had a conversation at the witness's place of employment and that relator stated she beat the child because she `loved Donald more.'"
In child custody cases, the trial judge has great discretion. His decision should not be disturbed on review unless there is a clear showing of abuse of discretion. Kerr v. Kerr, 339 So.2d 913 (1st Cir. 1977), and the authorities cited therein.
We conclude the findings by the trial judge that Ms. Halpin and her husband, Donald Chaisson, are unfit for the custody of the child, and that the best interest of the child requires that its custody remain with Mr. Girouard, are clearly supported by the evidence.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-in-rule, Ms. Halpin.
AFFIRMED.