641 So.2d 1027 (1994)
Christina Susan OGLESBY, Plaintiff-Appellant,
v.
Larry Hooper OGLESBY, Defendant-Appellee.
No. 25974-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*1028 John S. Stephens, Shreveport, for plaintiff-appellant.
Northwest Louisiana Legal Services by Gary M. Skeen, Shreveport, for defendant-appellee.
*1029 Before SEXTON, NORRIS and VICTORY, JJ.
SEXTON, Judge.
In this suit to modify custody of a nine-year-old child, the trial court awarded sole custody to the father, Larry Hooper Oglesby, and restricted the visitation rights of the mother, Christina Susan Oglesby Sepulvado. Ms. Sepulvado appeals, asserting the trial court erred in granting Mr. Oglesby sole custody and unreasonably restricting her visitation rights. For the following reasons, we affirm.
Christina Susan Oglesby obtained a divorce decree by default on June 11, 1987, ending less than four years of marriage to Larry Hooper Oglesby. Mr. Oglesby was in the military and was domiciled in Irving, Texas, at the time of the divorce, while Ms. Oglesby was domiciled in Bossier City, Louisiana. Ms. Oglesby prayed for and obtained sole custody of a child of the marriage, Wendy Nichole Oglesby, who is now nine years old.
In May of 1991, Mr. Oglesby, now domiciled in Bossier Parish, petitioned for sole custody of the child on grounds it was in the best interest of the child. Mr. Oglesby alleged that the mother was living in open concubinage with her paramour, Marvin Dean Sepulvado, who had a criminal record and, allegedly, did not have good moral character. Also in the house were three additional childrenissue of the former Mrs. Oglesby and Mr. Sepulvado. Mr. Oglesby also alleged that under the mother's custody, Wendy was inadequately clothed, unsupervised, lice-ridden, had failed kindergarten, and had missed 26 and 29 days of school the past two years, respectively.
As a result of the above action, the parties entered an Interim Judgment On Rule Nisi on June 27, 1991, by consent, whereby custody of Wendy would be shared jointly by the parties. Christina Susan Oglesby Sepulvado (Christina having married Mr. Sepulvado) was named as domiciliary parent. This agreement was reduced to writing and signed by the trial court on August 13, 1991. In conjunction therewith, on October 24, 1991, the court approved a Joint Custody Implementation Plan submitted by the parties. Under the plan, Mr. Oglesby had physical custody of the child every other weekend and two months every summer.
In March 1993, Wendy Oglesby, then nine years old, asked her teacher if she could see the school counselor. Wendy met with Doris Marie Player, the school counselor. Ms. Player would later testify that in the initial interview, Wendy told her that her mother and stepfather were arguing and fighting frequently, and as a result, she could not sleep at night. On her second visit to Ms. Player, Wendy described a physical confrontation in which her stepfather, Mr. Sepulvado, held an object (later described as a knife) to her mother's throat. Ms. Player also testified that Wendy described what appeared to be drug use by Mr. Sepulvado.
Ms. Player informed Mr. Oglesby of the problem through his wife by remarriage, Pam Oglesby. Mr. Oglesby was still in military service at the time and was stationed at Fort Hood. He returned home that weekend and brought the child to a child psychologist on the advice of his attorney and Ms. Player. This psychologist, Mickey Jones, interviewed Wendy on May 15, 1993. According to her testimony, the child related to her the same incidents that she had told Ms. Player of and expressed her fear for her safety and that of her mother and stepbrothers. Ms. Jones diagnosed Wendy with acute post-traumatic stress disorder. On May 17, 1993, Ms. Jones wrote a letter to Judge Harmon Drew requesting court intervention and removal of the child from her current environment.
Also on May 17, 1993, Mr. Oglesby filed a petition for modification of custody and for a protective order pursuant to LSA-R.S. 46:2134 under the Protection From Family Violence Act. Mr. Oglesby sought immediate custody pending trial and permanent sole custody of Wendy. Prior to trial, the court appointed Ms. Jones to counsel and evaluate Wendy Oglesby, Christina Sepulvado, Larry Oglesby, and Pam Oglesby.
At trial, Ms. Jones testified regarding her diagnosis of post-traumatic stress disorder caused by the instability of Wendy's home life. She testified that Wendy related to her *1030 the threats and physical abuse meted out by Mr. Sepulvado against each member of the family. Ms. Jones also testified regarding one incident where Wendy was rapped across the face by Mr. Sepulvado. Ms. Jones testified that Mr. Sepulvado abused drugs and alcohol.
Pending trial, Wendy was in the sole custody of her father. During this time, Ms. Jones noticed marked improvement in her psychological well being. She testified that during her counseling sessions, Wendy stated she was scared to return to her mother's home and hoped to never see Mr. Sepulvado again. Wendy also stated she felt safe at her father's home and was glad he did not use alcohol or drugs. Based on her counseling and interviews with Wendy, Ms. Sepulvado, and Larry and Pam Oglesby, Ms. Jones determined that awarding Mr. Oglesby sole custody would be in the best interest of the child. Ms. Jones also opined the child would be in physical danger if she were to return to Ms. Sepulvado's home.
Larry and Pam Oglesby testified at trial concerning their desire to obtain sole custody of Wendy. Larry Oglesby testified the joint custody arrangement was unworkable due to Mr. Sepulvado's hostile attitude. Although Christina Sepulvado filed for a divorce from Mr. Sepulvado, evidence indicated that they were still living together. Mr. Oglesby also testified he had seen Mr. Sepulvado picking Christina Sepulvado up from her counseling session with Wendy and Ms. Jones.
Mr. Sepulvado had an outstanding bench warrant for DWI, fourth offense at the time of trial and had several prior misdemeanor convictions, including two simple battery offenses.
The trial court awarded Mr. Oglesby sole custody of the child and restricted visitation by Ms. Sepulvado to weekly visitation in the presence of a counselor to be paid by her. The court also ordered Ms. Sepulvado to pay monthly child support of sixty dollars.
Ms. Sepulvado asserts the trial court erred in awarding sole custody to Larry Oglesby and in excessively limiting her visitation, as well as requiring the supervision of a paid counselor during visitation.
Louisiana law establishes a presumption in favor of joint custody of children of the marriage. LSA-C.C. Art. 131(C); Yelverton v. Yelverton, 621 So.2d 36 (La. App.2d Cir.1993). This presumption may be rebutted by a showing that joint custody is not in the child's best interest. LSA-C.C.P. Art. 131 C(2). The paramount consideration in a change of custody case is always the best interest of the children. LSA-C.C. Art. 131 E; Odom v. Odom, 606 So.2d 862 (La.App.2d Cir.1992), writ denied, 608 So.2d 153 (La.1992).
When a trial court has made a considered decree of permanent custody, the party seeking a change in custody bears a heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child. Bergeron v. Bergeron, 492 So.2d 1193 (La.1986); Odom v. Odom, supra. A "considered decree" is one for which evidence as to parental fitness to exercise custody is received by the court. A custody decree entered by default, or that is not contested, or by consent of the parties is not a considered decree. Odom v. Odom, supra; Norris v. Norris, 604 So.2d 107 (La.App.2d Cir.1992).
The party alleging applicability of the Bergeron rule must show, through the introduction of the transcript of the prior proceeding or otherwise, that the custody issue was previously "considered." If the record is silent regarding whether the issue of custody has been litigated, the court will presume that the prior decree was uncontested, and hence, not a considered decree. Odom v. Odom, supra.
In the instant case, the Interim Judgment On Rule Nisi ambiguously referred to "evidence adduced and stipulations," as well as the cause having come for trial "by consent." It is not clear from the judgement (there being no transcript of the proceedings) what, if any, evidence was adduced and what *1031 it related to, even though the petition prays solely for modification of custody.
Under similar facts, this court in Norris v. Norris, supra, referred to the court minutes to find what evidence was adduced. In that case, the court minutes indicated that the evidence adduced pertained to the separation of the parties, while the "agreement" was with respect to joint custody. Hence, we held that the trial court's determination that the prior judgment awarding joint custody was not a considered decree was not plainly wrong.
In the instant case, the court minutes of the June 27, 1991 hearing make no reference to any evidence and, in pertinent part, simply state:
Rule is called and by agreement, there will be an interim order granting joint custody of the minor child with Mrs. Sepulvado being designated the primary domiciliary parent and Mr. Oglesby having visitation every other weekend from 5:00 P.M. Friday....
The clear implication of the interim judgment and the minutes is that the matter was handled by consent. Accordingly, the heavy burden of proof of Bergeron does not apply.
Nevertheless, a party seeking a change of custody must show a change in circumstances and that the new custody arrangement would be in the children's best interest. Odom v. Odom, supra. A trial court has great discretion in making custody awards and its rulings will not be overturned on appeal absent an abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La. 1988); Pahal v. Pahal, 606 So.2d 1359 (La. App.2d Cir.1992); Odom v. Odom, supra; Timmons v. Timmons, 605 So.2d 1162 (La. App.2d Cir.1992), writ denied, 608 So.2d 195 (La.1992); Schubert v. Schubert, 605 So.2d 666 (La.App.2d Cir.1992), writ denied, 609 So.2d 230 (La.1992).
The evidence revealed that Wendy had been subjected to physical and psychological abuse. Her mother was married to a man who abused alcohol and drugs and had several prior misdemeanor convictions, including simple battery offenses. While residing with her mother, Wendy witnessed Mr. Sepulvado hold a knife to her mother's throat. Certainly the evidence was sufficient for the trial court to determine that a change in circumstances had arisen and that a new custody arrangement would be in the child's best interest.
Appellant further argues she should not be held accountable for the actions of Mr. Sepulvado. We are convinced the trial court correctly held her accountable for her own action or inaction by remaining in a relationship with this individual which afforded the child an unsuitable and unstable environment. See Hebert v. Hebert, 159 So.2d 537 (La.App. 3d Cir.1964).
The trial court ordered weekly supervised visitation after determining that Mr. Sepulvado was a danger to the child, and that Ms. Sepulvado could not be trusted to keep him away from Wendy. Ms. Sepulvado argues the trial court unreasonably restricted her visitation. Furthermore, Ms. Sepulvado contends that because she is cast in judgment for the costs of the counselor who must be present during her visits, her impecuniosity precludes her from seeing the child.
Counsel for Ms. Sepulvado claims that the costs of the counselor is $25.00 per hour. If Ms. Sepulvado only sees the child the minimum one hour each week, this computes to $108.25 per month. In addition, Ms. Sepulvado must pay child support of $60.00 per month. Ms. Sepulvado only makes a net income of $464.47 per month from her job at the Harvest Buffet. Subtracting the minimum counselor costs and child support payment from her monthly net income leaves Ms. Sepulvado only $296.22 per month to live on.
A parent not granted custody or joint custody of a child is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would not be in the best interest of the child. LSA-C.C. Art. 136(A). The trial court has an inherent power to determine a child's best interest and to tailor custody orders, including visitation, in a manner that minimizes risk of harm to the child. Norris v. Norris, 604 So.2d 107 (La.App.2d Cir.1992).
*1032 It is clear that the trial court considered the financial circumstances of Ms. Sepulvado. In fact, the court departed downward from the support guidelines as a result of this consideration. It is also apparent from the court's reasons that the trial judge considered the restricted and supervised visitation necessary for the welfare of the child and to repair the relationship with the mother. The court encouraged Ms. Sepulvado to seek professional counseling herself in order that these restrictions may be lifted in the future, provided that Ms. Sepulvado changes the circumstances that made the restrictions necessary. After viewing the evidence, we cannot say the trial court abused its discretion by ordering limited supervised visitation. State, In Interest of C.G., 609 So.2d 1049 (La.App.2d Cir.1992).
Therefore, we conclude the trial court did not abuse its discretion either by awarding sole custody to Mr. Oglesby or by establishing limited, supervised visitation for Ms. Sepulvado. The judgment appealed is affirmed at appellant's cost.
AFFIRMED.