785 So.2d 989 (2001)
Wilbert A. DERBIGNY, Jr., Plaintiff-Appellant,
v.
Shannon D. DERBIGNY, Defendant-Appellee.
No. 34,672-CA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2001.
*990 Robert Jahnke, Shreveport, Counsel for Appellant.
Juan A. Byrd, Luling, Counsel for Appellee.
Before NORRIS, KOSTELKA and DREW, JJ.
DREW, J.
This court previously considered this child custody dispute in an unpublished opinion in No. 32,403-CA rendered May 5, 1999, which affirmed the trial court's grant of sole custody to the father, Wilbert A. Derbigny, Jr. Thereafter, the Louisiana Supreme Court granted the mother's (Shannon D. Derbigny) application for supervisory review, reversed the lower court judgments, and remanded the matter to the trial court for a hearing to determine if a modification of custody in favor of Mr. Derbigny was in the best interest of the child. On April 28, 2000, the trial court awarded joint custody of Benjamin Isaiah Derbigny to the father and the mother, Shannon D. Derbigny, with the mother named domiciliary parent subject to the visitation rights of the father. The father appealed. For the following reasons, the judgment of the trial court is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND
February 24, 1994 Benjamin Isaiah Derbigny born.
June 23, 1995 The father and mother marry.
February 2, 1997 Parents separate.
February 18, 1997 Father filed for C.C. art. 102 divorce in Caddo Parish, the last matrimonial domicile.
April 9, 1997 Mother filed answer and reconventional demand.
May 7, 1997 Consent judgment rendered with joint custody with mother as domiciliary *991 parent and father with specific visitation rights.
June, 1997 Mother moved with son to New Orleans.
October 14, 1997 Consent judgment signed.
December 12, 1997 Father filed pleadings seeking divorce and for mother to be held in contempt of court for moving to New Orleans without notice and for preventing the father from seeing the child.
March 31, 1998 Hearing on motion attended by mother and father both represented by counsel; Since not pled, custody was not an issue; Rule for contempt dismissed with prejudice, since father did not prove mother intentionally violated terms of original custody decree; Trial court rendered judgment of divorce.
April 29, 1998 Father filed petition to modify custody and a second rule for contempt on same grounds (move to N.O. and no visitation with child).
July 20, 1998 Hearing on motion held; Father and attorney present; Mother did not appear, but was represented by counsel; At close of father's evidence, the trial court dismissed his action because contempt was on the same grounds and a material change in circumstances was not shown.
September 9, 1998 Father filed petition to modify custody and sought to have mother held in contempt for refusing to allow the father to see the child for over fifteen months.
September 14, 1998 Judgments of dismissal and divorce (previously rendered on March 31, 1998) were signed.
September 16, 1998 Service made on mother through her attorney without objection.
November 16, 1998 Hearing held at which neither mother nor attorney for mother appeared; At close of father's evidence, the trial court ruled that mother's willful refusal to let father see son was a material change in circumstance and change in custody was in child's best interest; Judgment gave father sole custody and terminated his support obligation while giving mother liberal visitation and ordering her to pay $221 per month child support.
November 18, 1998 Judgment changing custody signed.
December 18, 1998 Mother appealed after filing several pleadings in Orleans Parish in effort to obtain custody there.
May 5, 1999 This court rendered an unpublished opinion affirming the November 18, 1998 judgment granting sole custody to the father; This court held Bergeron did not apply.
May 10, 1999 Trial court signed judgment for its July 20, 1998 ruling in which the trial court found in favor of Mrs. Derbigny and dismissed Mr. Derbigny's motions to modify custody decree and to find Mrs. Derbigny in contempt
* * * Mother sought supervisory writ from supreme court
August 4, 1999 Supreme court granted writs with the following order in Derbigny v. Derbigny, 99-2008 (La.8/4/99), 747 So.2d 39:
The judgments of the lower courts are reversed and the case is remanded to the district court for it to conduct a hearing to determine whether modification of custody in favor of Mr. Derbigny is in the best interest of the child. The evidence in this case indicates the trial judge twice refused to find the custodial parent in contempt of visitation rules. *992 Thereafter, the trial judge completely removed custody from the custodial parent who had this child from birth. The evidence in the record does not support this ruling and does not indicate the basis for a determination that such action is in the child's best interest. We make no ruling on the ultimate result in this case, but rather order the trial court to conduct an expedited hearing to determine the best interest of the child. The district court is ordered to conduct this hearing within twenty days, giving due preference and priority to the matter. See State ex rel. T.R. v. R.W.T., 98-2274 (La.1/20/99), 737 So.2d 688. ("This Court has recognized that, to the extent practicable, any and all proceedings affecting children should be given expeditious treatment."); La.S.Ct. Rules XXXII-XXXIV.
August 27, 1999 Rule taken up and all parties ordered to be examined by psychologists.
February 23, 2000 Father filed Motion to Fix Trial.
April 10-11, 2000 Trial; After the father rested his case, the mother moved for a Directed Verdict; Trial court granted Directed Verdict giving parties joint custody with the mother as domiciliary parent and visitation to the father who was to pay $175 per month child support.
April 28, 2000 Judgment signed.
June 6, 2000 Father appealed.

DISCUSSION
The best interest of the child is the paramount consideration in resolving any child custody dispute. La. C.C. art. 131. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/1/2000) So.2d, 2000 WL 1634123. La. C.C. art. 134 states:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In light of the foregoing factors, each custody dispute is to be decided on its own facts and not on a mechanical evaluation of all of the art. 134 factors. The trial *993 court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. A trial court's assessment of the evidence is entitled to great weight and will not be disturbed absent a clear abuse of discretion. Rogers, supra.
In AEB v. JBE, 99-2668 (La.11/30/99), 752 So.2d 756, 760-761, the supreme court discussed changes of custody and stated:
La. Civ.Code art. 131 provides that "[in a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child.]" Comment (d) to article 131 states that the article should be followed in actions to change custody as well as in those to initially set it. Comment (d) further states that the jurisprudential requirements of Bergeron v.. Bergeron, 492 So.2d 1193 (La.1986), are applied to actions to change custody rendered in considered decrees. In such actions, the proponent of change must show that a change of circumstances materially affecting the welfare of the child has occurred since the prior order respecting custody. Bergeron, 492 So.2d at 1195. The party seeking a change "bears the heavy burden of proving that the continuation of the present custody is so deleterious to the child as to justify a modification of the custody decree, or of proving by clear and convincing evidence that the harm likely to be caused by a change of environment is substantially outweighed by its advantages to the child." Bergeron, 492 So.2d at 1200. This burden of proof is imposed as a means of implementing the best interest standard in light of the special considerations present in change of custody cases. Last, the determination of the trial judge in child custody matters is entitled to great weight, and his discretion will not be disturbed on review in the absence of a clear showing of abuse. Bergeron, 492 So.2d at 1196.
A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court. Oglesby v. Oglesby, 25,974 (La.App.2d Cir.08/17/94), 641 So.2d 1027. A custody decree entered by default, or that is not contested, or by consent of the parties, however, is not a considered decree. Oglesby, supra. If no considered decree has been rendered, the "heavy burden" rule does not apply; the party seeking to modify the custody arrangement must prove a change in circumstances materially affecting the child's welfare and that the new custody arrangement would be in the best interest of the child. Havener v.. Havener, 29,785 (La.App.2d Cir.8/20/97), 700 So.2d 533; Stewart v. Stewart, 30,161 (La.App.2d Cir.01/21/98), 705 So.2d 802, writ denied, 98-0748 (La.05/01/98), 718 So.2d 418.
In oral reasons at the conclusion of the trial on remand, the trial court stated that the mother and father were equal on the first three factors set out in La. C.C. art. 134: love between parent and child; capacity of each to give love, guidance and education; and capacity of each parent to provide for child's material needs. Even though the child had spent more overall time in his mother's care, the trial court decided that the fourth factor was also even between the parents because the child was stable in both environments. Finding both parents at fault on moral fitness as it affects the child, the trial court considered the mother and father equally at fault because both had denigrated the other parent to the child who was hesitant to express feelings for one parent around the other.
*994 The trial court stated that some of the expert testimony about the mother's mental health concerned him. However, during cross-examination, the psychologist acknowledged the mother was not suicidal and that her stress could be related to the custody fight. The experts agreed that neither would be a bad parent. The trial court noted the mother's concern that the father was a bad man and the father's concern that the mother did not have the background to provide the training and opportunity that he could offer his son. The trial court ultimately concluded that the parents were "probably even" on the mental and physical health of the parties.
Since the child was happy in both homes, the trial court found that the eighth factor dealing with the home, school and community history of the child was also even between the parents. Due to the child's young age, the trial court decided he was not old or mature enough to express a preference between his parents.
Concerning the willingness and ability of the parties to facilitate and encourage a close continuing relationship between the child and the other party, the trial court observed that the mother feared that the father has the capacity to have his way. Although the experts concluded her fears were unrealistic, the trial court observed that to her the fears were real and that she would continue to need counseling to deal with her concerns. However, the trial court decided, that with proper guidelines set by the court, both parties could conduct themselves as adult parents.
Due to the status of the mother residing in New Orleans and the father residing in Shreveport, the trial court discarded the factor concerning the distance between the parties' residences, since it made swapping the child every seven to ten days impossible. As to the responsibility for the care and rearing of the child previously exercised, the trial court stated that, for whatever reason, the mother has had the primary care of the child, but that the father did well when he had sole responsibility for the child.
The trial court stated that the father had not met the Bergeron burden necessary to obtain a change of custody of his son. Further, under a best interests analysis, the trial court noted the case was a close call. The trial court granted the mother's motion for a directed verdict.[1] Continuing joint custody with the mother as the domiciliary parent, the trial court pronounced a number of guidelines and restrictions for the parents' future behavior which were incorporated into the signed judgment and the joint custody plan signed April 28, 2000.
On appeal the father contended that the trial court erred in applying the Bergeron, supra, standard and heavy burden of proof to this matter. In light of the Louisiana Supreme Court's remand with instructions for the trial court to conduct a best interest hearing, the father argued that only the best interest of the child should have been considered by the trial judge. In his view, it was in his son's best interest to be placed in his care.
On the other hand, the mother urged that the trial court should have applied and did properly apply the Bergeron standard to this dispute because the May 1999 judgment resulting from the July 1998 hearing was a considered decree. The mother also noted that the trial court pointed out that even if the Bergeron burden *995 were not applied, the evidence supported placing the child with the mother who had cared for the child most of his life. According to the mother, the trial court's findings as to custody and credibility are entitled to great weight.
This matter has a lengthy and convoluted procedural history. Following the 1997 consent judgment the father twice filed rules for contempt against the mother for her failure to permit him to see his son. In the first rule, custody was not an issue and the rule for contempt was denied because the father did not prove the mother's violations were deliberate. The second rule for contempt was accompanied by a request for a change in custody. That rule was heard on July 20, 1998. In oral reasons the trial court dismissed the father's rule for contempt because it was based on the same grounds as the previous effort to hold the mother in contempt. The district judge at that time noted that correspondence from the father to the mother concerning visitation was threatening. Observing that Bergeron, supra, was not applicable at that time since they were dealing with a consent decree, the trial court stated there had been minimal evidence on best interest. No modification of the custody was granted.
Although the trial court asked that a judgment for that ruling be submitted, the former trial judge did not sign that judgment until May 10, 1999five days after this court rendered its opinion in No. 32,403-CA. The trial court noted thereon that the judgment was not submitted to him for signature until May 9, 1999. This court's May 5, 1999 opinion affirmed a November 1998 judgment in which the trial court granted sole custody of the child to the father due to the mother's continued refusal to cooperate with visitation. This court ruled that Bergeron, supra, did not apply. However, this court obviously did not have benefit of the judgment reflecting the trial court's July 20, 1998 refusal to modify the custody order, since it was not even signed until days after this court's opinion was rendered. Since that trial court judgment is not contained in the appellate record of No. 32,403-CA, we surmise, but cannot know, that the Louisiana Supreme Court also did not have that May 10, 1999 judgment to consider in making its ruling and directing that a best interest hearing be held.
As noted previously, the judgment incorporating the July 20, 1998 ruling denying the rule for contempt and change of custody was very belatedly signed on May 10, 1999, some days after this court's opinion was rendered. If this court were to look at the record in its entirety and treated the May 10, 1999 judgment as a considered decree retaining joint custody with the mother as domiciliary parent, this court would be required to disregard the supreme court's instructions to the trial court on remand to conduct a best interest hearing on the custody issue.
The trial court stated correctly that if the heavy Bergeron standard were applied, the father did not meet that burden of proof in the evidence adduced at the hearing conducted on remand. However, the trial court conducted a best interest analysis under La. C.C. art. 134. The parties stipulated that the father did not see his son for an eighteen month period. The trial court heard extensive testimony from the two court-appointed mental health experts who examined the father, mother and the child along with testimony from the parents and other witnesses.
The entire record and the evidence at the hearing on remand reveal that both these parents have been examples of how parents should not behave in a child custody contest. The father engaged in threats through correspondence and the mother was uncooperative in the extreme. While each parent focused unrelentingly *996 on the other parent's shortcomings and faults, both are clearly devoted parents who love their child and want the best for him. The child did well in the care of each of his parents.
The experts reported that psychological testing on the father, a student in a doctoral program at LSUMC in Shreveport, revealed him to be defensive and very concerned about his social image. He showed tendencies to hyperactivity, impulsiveness, disorganization and narcissism. They concluded he was likely to show frustration when things did not go his way and possibly exhibit poor judgment. Outgoing and gregarious, the father may also be manipulative. As to the mother, she gave guarded responses seeking to present herself in the best light. Inhibited in social relationships and hypersensitive to what others think of her, the mother's testing revealed some depression. She also showed serious problems with perceptual accuracy and laxity in controlling her emotions.
The experts concluded that both parents loved their child and both had the ability to be adequate parents and to communicate with the other parent. Therefore, the recommendation was for continued joint custody with a definite visitation schedule. Finding that the child had close relationships with both his parents, the experts stated both parents had the ability to adequately parent their child. The experts found that the father had greater personal and psychological resources than the mother whose emotionality and mistrust of and anger at the father reduced her ability to present him in a positive manner to the child. The experts recommended that the father be domiciliary parent with the mother having extensive visitation. They also recommended counseling for the mother's depression and monitoring the child for Attention Deficit Hyperactivity Disorder if he experienced behavior problems in school.
In his testimony, Dr. Webb Sentell, psychologist, testified the child was doing pretty well and that the only problem he had was his parents' lack of willingness to bury their differences and communicate. Concerning the counseling recommendation, the psychologist stated that was a conservative approach in the event she was not named domiciliary parent. He acknowledged the mother was not suicidal but the testing indicated she was emotionally reactive to stress and had depression tendencies. Dr. Sentell also recognized that many people would test showing depression like the mother had they been going through a similar bitter divorce and protracted custody dispute. He further acknowledged that it was possible the mother's depression would improve or disappear when the custody dispute was resolved.
Dr. Sentell confirmed there was a period from December 1998 to March 1999 when the father, at that time the domiciliary parent, refused the mother access to the child. The expert acknowledged that it was a close case in terms of parenting. The father was not perfect and the mother had psychological weaknesses along with strengths. Neither parent was unfit and they had tremendous conflict over their differing parenting styles. Dr. Sentell characterized the differences between the two parents as fairly minimal, fairly small. He described the father as the more dominant personality and the mother as more passive and agreed with the trial court that their conflict was that each feared the child would reflect characteristics each parent disliked in the other parent.
Dr. Susan Vigen, psychologist, testified the very active and perceptive child loved and enjoyed being with both his parents. She described him as relaxed, happy and friendly with both parents. Considering the weaknesses in the mother detailed in *997 Dr. Sentell's testimony, Dr. Vigen acknowledged that the child would not be at significant risk if he resided with his mother, since he had lived with her and not been harmed. She stated that the child was resilient and both parents had the fitness to rear him. In response to a critical question concerning the strength of her recommendation that the father be the domiciliary parent, the transcript is apparently garbled.[2] The expert stated that the child was doing quite well, particularly in light of the discord between his parents, and agreed the mother should be given some credit for the child's emotional health.
A trial court's determination of child custody is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. Shaw v. Shaw, 30-613 (La.App.2d Cir.6/24/98), 714 So.2d 906; writs denied, 98-2414 (La.11/20/98), 729 So.2d 556, 98-2426 (La.11/20/98), 729 So.2d 558. After weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the experts' professional qualifications and experience and the facts upon which the opinions are based. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Warlick v. Warlick, 27,389 (La.App. 2 Cir. 9/29/95), 661 So.2d 706.
We cannot say that the trial court's rejection of the experts' recommendation that the father be named domiciliary parent is manifestly erroneous or clearly wrong. We agree with the trial court's assessment that the case was a very close call. When pressed, the court-appointed experts also admitted that. The record shows that the child has spent the majority of his life residing with his mother and is doing well. Further, the experts emphasized the mother's psychological weaknesses but not the father's. The record also shows that the child has both paternal and maternal grandparents and other relatives residing in the New Orleans area.
Faced with a difficult case, the trial court exercised its great discretion in evaluating the experts' information along with the other evidence and deciding it was in the child's best interests to continue the status quo of joint custody with the mother as domiciliary parent. In fashioning the joint custody plan signed along with the judgment continuing joint custody with the mother as domiciliary parent, the trial court did a good job of addressing issues, such as transportation and access between visits, that have led to serious conflict between the parties in the past.
For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs are assessed equally between the parties.
NOTES
[1] We observe the directed verdict is available only in a jury trial setting. La. C.C.P. art. 1810. The proper procedural vehicle in this bench trial was a motion for involuntary dismissal at the conclusion of the plaintiff/father's case. La. C.C.P. art. 1672(B). The motion in this matter is treated as the latter.
[2] The transcript cryptically reports Dr. Vigen's response to have been: "I would classify it as a moderate to strange recommendation as a moderate to weak recommendation."